FILED
98 SEP -2 PM 12:16
U.S. DISTRICT COURT
N.D. OF ALABAMA

ENTERED
SEP 2 1998

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

CASSANDRA BARNES, )
 )
 Plaintiff, )
 )
v. ) CV-97-AR-1126-S
 )
CITY OF VESTAVIA HILLS, )
et al., )
 )
 Defendants. )

## MEMORANDUM OPINION

The above-entitled action is before the court on a motion for summary judgment filed by defendants City of Vestavia Hills, Alabama ("City"), C. Pat Reynolds ("Reynolds"), individually and as Mayor of the City, and Doug Jefferson ("Jefferson"), individually and as Chief of Police of the City. Plaintiff, Cassandra Barnes ("Barnes"), alleges that the City terminated her from employment as a patrol officer on account of both her gender (female) and her race (black). It is impossible to tell whether the charge is of "intersectional" discrimination or if the alleged proscribed motivations are alternative. She claims both under 42 U.S.C. § 1983 ("§ 1983") and 42 U.S.C. §§ 2000e *et seq.*, *as amended* ("Title VII"). Her original complaint also alleged that she was denied reasonable accommodation for work-related injuries to her back, and that her alleged disability proximately contributed to the City's decision to fire her, in violation of the Americans with Disabilities Act, 42 U.S.C. §§ 12102 *et seq.*

1

("ADA"). Originally, then, it was possible to construe Barnes' complaint to be that she was victimized because she was in a special class, namely, black females with a bad back. The ADA claim has been expressly abandoned, leaving the court to deal only with claims of race and/or sex discrimination.

For the reasons set out more fully below, the court concludes that no genuine issues of material fact exist in regard to any of plaintiff's remaining claims and that defendants' motion for summary judgment is due to be granted.

Although defendants' motion filed on June 10, 1998, to exclude all of plaintiff's evidence has merit, the court has considered plaintiff's evidence, which does not affect the outcome. Defendants' said motion will therefore be deemed moot.

### I. Pertinent Undisputed Facts

Barnes was employed by the City in February, 1990 as a patrol officer. She complained that she sustained a back injury in 1993 while performing job-related duties. In October of 1994, she was terminated for the City's expressed reasons of being absent without leave, for insubordination, and for disobeying orders, in violation of the Rules and Regulations Manual of the Personnel Board of Jefferson County ("Personnel Board"). All law enforcement officers in the City are subject to these rules. Upon appeal to the Personnel Board, as provided by Alabama law, that body rescinded the termination and instead subjected Barnes to a 30-day suspension without pay.

In late July, 1996 Barnes once again complained of back pain

2

and missed several days of work.  The City paid her on an
"injured with pay" status util her physician certified that she
was able to return to full, unrestricted duty after July 31,
1996.  Between August 1 and August 18, however, Barnes did not
report for her duty shifts on 8 days, complaining to her
supervisors that she remained in too much pain.  Her supervisors
directed her to provide medical excuses for her absences, but she
failed to do so.  Her supervisors then directed her to attend a
meeting on August 20, 1996 to discuss her absences, but she
failed to report, without giving prior notice of her intention
not to attend, and she further failed to return repeated phone
calls and pages when her supervisors attempted to ascertain why
she missed the meeting.

Barnes missed work again between August 22 and August 25.
The City paid her for some of her absences as though she had
taken a vacation leave, but finally her unexcused absence on
August 25 was registered as "leave without pay".  On August 27,
Barnes requested a paid medical leave, and the City responded by
requesting documentation of her medical problem.  When she again
failed to provide any such documentation, the City informed her
that her absences earlier in August would be characterized as
"absent without leave."  Barnes requested and was granted a
personal leave on August 29.  The City converted Barnes' personal
leave to "administrative leave with pay" and notified Barnes of
this action by letter on September 9.  She remained off work
until September 11.

On November 20, 1996, Jefferson wrote to Barnes, charging

3

her with violations nearly identical to those which had resulted in disciplinary action against her in 1994. In addition to absenteeism, insubordination, and disobeying orders, Barnes was charged with neglect of duty and a violation of the Personnel Board's rules regarding documentation of sick leaves. After a predetermination hearing on November 25, Jefferson recommended that Barnes be fired. Following this recommendation, Reynolds ordered Barnes' termination on November 26.

Barnes appealed the termination to the Personnel Board, as before. In February, 1997 a Hearing Officer for the Personnel Board recommended that the termination be sustained, and the full Board sustained the termination on March 3. As provided by Alabama law, Barnes appealed further to the Circuit Court of Jefferson County, Alabama, which sustained Barnes' termination on May 4, 1998.

On November 22, 1996, prior to her termination, on November 22, 1996, Barnes filed charges with the EEOC, pursuant to Title VII of the Civil Rights Act of 1964 (but not against the Chief or the Mayor). In February, 1997 the EEOC expressed its inability to conclude that any of the alleged violations had occurred, and Barnes was thereupon advised of her right to sue. This suit was filed on May 5, 1997.

## II. Summary Judgment Standard

Rule 56 states in pertinent part:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show

4

that there is no genuine issue as to any material fact and
        that the moving party is entitled to a judgment as a matter
        of law.

*Rule 56(c), F.R.Civ.P.* In addition, the Eleventh Circuit has observed that "[s]ummary judgment is appropriate where there exists no genuine issue of material fact and the movant is entitled to judgment as a matter of law." *Turnes v. AmSouth Bank, N.A.*, 36 F.3d 1057, 1061 (11th Cir. 1994). The City has invoked Rule 56.

### III. Discussion

#### Plaintiff's ADA claim and claims against Reynolds and Jefferson individually

In Barnes' "Response to Motion for Summary Judgment," which is, in reality, a brief, but was nevertheless filed by the Clerk, she abandons all claims asserted under the ADA, and against Reynolds and Jefferson in their individual capacities. Accordingly, defendants' motion for summary judgment regarding all ADA claims, as well as regarding Barnes' claims against Reynolds and Jefferson, individually, is due to be granted by consent.

#### Plaintiff's Title VII Claim

Because neither Reynolds nor Jefferson was the employer of Barnes, she has no Title VII claim against either of them. This may explain why she did not name them in her EEOC complaint. The

5

City rightly argues that to make a Title VII claim, plaintiff must establish a prima facie case by showing:

(1) that she belongs to a protected class;

(2) that she was subjected to adverse job action;

(3) that her employer treated similarly situated employees outside her classification more favorably; and

(4) that she was qualified to do the job.

*Holifield v. Reno*, 115 F.3d 1555, 1562 (11th Cir. 1997) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973)).

Barnes makes only two claims of disparate treatment under Title VII. The court will examine these claims separately to determine whether Barnes makes out a *prima facie* case in either.

In the first instance, Barnes claims that the City refused to provide reasonable accommodations for her back injury, while similarly situated patrol officers outside her protected class (*i.e.*, officers who were white and/or male) were treated preferentially. In particular, Barnes claims that she was refused light duty assignments, but that other officers were provided light duty assignments as accommodations for their health problems. The record indicates that plaintiff's claim in this regard is totally unfounded. None of the City's patrol officers were ever given light duty <u>except</u> Barnes. If any disparate treatment occurred regarding light duty assignments as accommodation for injury, it occurred <u>in favor of</u> Barnes. She

6

was provided light duty assignments when available, such as assisting the evidence technician with fingerprint classification, and she admits as much. *Depo. of Barnes, p. 133.* Indeed, it even appears that the City generously accommodated plaintiff's medical problems. After she was informed that her repeated absences were considered as AWOL, she requested personal leave time, which was granted. Acting on its own initiative, the City then converted that time to "administrative leave" <u>with pay</u>. The City appears to have gone above and beyond the call on the matter. In short, Barnes was not subjected to any impermissible disparate treatment with regard to accommodation of her medical needs. Thus, there is no need to delve into the City's motives for doing nothing violative of plaintiff's rights. Accordingly, the City is due to receive summary judgment with regard to Barnes' claim of disparate treatment accommodating her inadequately proven medical problems.

As a separate matter, Barnes claims that she was disciplined more severely than similarly situated white and/or male officers. Again, this court finds that Barnes has failed to demonstrate that any similarly situated officers were treated differently with regard to discipline.

To support her claim, Barnes makes reference either to incidents involving alleged misconduct, not work-related and not while the alleged comparator officers were on duty, or to an

incident involving the propriety of an officer's use of lethal force against an attacking canine. In each of these incidents the offending officer was disciplined but not terminated. By contrast, plaintiff was terminated for misconduct which directly related to her work as a patrol officer: insubordination, failure to obey an order of a superior, neglect of duty, being absent without leave, and failure to produce medical documentation as required by the Jefferson County Personnel Board rules. Also, unlike the other officers who were disciplined, plaintiff was on notice that repeated absenteeism would result in termination, because she had been terminated for that specific reason previously (even though later reinstated). She apparently took no heed of the flapping red flag. Clearly, the disciplinary actions imposed on others, and upon which plaintiff relies for her claim of disparate treatment, do not arise from circumstances similar to her own situation. In short, there were no similarly situated patrol officers whom the City treated with less severity than it treated plaintiff. Plaintiff's *prima facie* case under Title VII thus falls woefully short.

Plaintiff does allege, and offers evidence to support, some terribly rude behavior on the part of her fellow patrol officers and her supervisors, including repeated insults, occasional sexual innuendo, and mean-spirited pranksterism. However, she provides no evidence to demonstrate that racial bias or gender

bias suggested by such alleged poor behavior served as a determinative motivation behind her termination, and she makes no distinct or cognizable allegations of sexual harassment or of racial harassment.

Even if Barnes' evidence should be thought to be adequate to permit an inference of discrimination, her *prima facie* case would be rebuttable by the City upon a showing of a legitimate, non-discriminatory reason for her termination. The City has certainly satisfied this burden, if such a burden exists. Plaintiff's misconduct, already described, undoubtedly rises to a level at which the City would be entitled to fire any employee. Uncontroverted evidence to this effect is provided by the fact that after the Chief and the Mayor decided to terminate Barnes, several appellate reviewers agreed that the firing was warranted. A Hearing Officer for the Jefferson County Personnel Board, after hearing plaintiff's appeal, recommended that the termination be sustained, and the Personnel Board itself did sustain the termination. After further appeal to the Circuit Court of Jefferson County, that tribunal also agreed that the termination was appropriate. In short, defendants have presented persuasive evidence that Barnes was terminated for legitimate, nondiscriminatory reasons. A reasonable jury could not reject the City's reasons that had persuaded the Personnel Board and three state court judges. The court finds that plaintiff has

failed to present sufficient evidence to lead a reasonable jury to conclude that the City's purported non-discriminatory reasons are pretextual.

The court merely notes that even if plaintiff's evidence established a *prima facie* case, which it does not, she would nonetheless ultimately fail, as a matter of law, with regard to her claim of disparate disciplinary treatment. The court concludes that defendants' motion for summary judgment is due to be granted with regard to plaintiff's Title VII claim of disparate treatment in disciplinary matters.

### Plaintiff's § 1983 Claims

Barnes' § 1983 claims are aimed at the City and at Reynolds and Jefferson in their official capacities as Mayor and Chief of Police. If she had not given up her § 1983 claims against Reynolds and Jefferson as individuals, the court might have to expend some effort to dispose of those claims, but in the present procedural posture of the case the § 1983 claims against the two officials in their official capacities are nothing more than a reiteration of the claims against the City. "Qualified immunity" is, thus, not an issue.

A municipal employee is permitted to pursue simultaneous Title VII and § 1983 claims against her employer. This principle was recently made plain by the Eleventh Circuit in *Johnson v.*

*City of Fort Lauderdale*, ___ F.3d ___ (11th Cir. August 3, 1998), 1998 WL 436365. This dual track, however, does not change the plaintiff's *prima facie* case burden if the alleged proscribed motivation for the disparate treatment is a violation of "equal protection" because of the plaintiff's gender or race. Actually, Barnes never mentions the Equal Protection Clause in her complaint, but the court is willing to deduce that an alleged failure to provide "equal protection" is what she was complaining about when she invoked § 1983. If she intended indirectly to reinvoke Title VII through reference to § 1983, she runs smack into *Arrington v. Cobb County*, 139 F.3d 865, 872 (11th Cir. 1998), which holds that "an allegation of a Title VII violation cannot provide the sole basis for a § 1983 claim."

The same requisites for a *prima facie* Title VII claim of race and/or sex discrimination apply to a § 1983 "equal protection" claim based on race and/or sex. Therefore, everything said above in analyzing Barnes' Title VII theory, is equally applicable to prevent her proceeding under § 1983. It need not be repeated.

Even if Barnes does not come up short with her evidence of disparate treatment in accommodation and in discipline, she presents no evidence to circumvent *Monell v. New York City Dept. of Social Servs.*, 436 U.S. 658, 98 S. Ct. 2018 (1978). She offers nothing to demonstrate that what happened to her was

11

pursuant to municipal policy or was done by someone with ultimate municipal authority. Her appeals to the Personnel Board show that that body was the final policymaker for the City in the matter of discipline. In *Vincent v. City of Talladega*, 980 F. Supp. 410 (N.D. Ala. 1997), this court demonstrated its reluctant willingness to follow *Scala v. City of Winter Park*, 116 F.3d 1396 (11th Cir. 1997). *Scala*, reinforced by the dictum in *Morro v. City of Birmingham*, 117 F.3d 508 (11th Cir. 1997), makes plain that Barnes was disciplined <u>not</u> by the City, nor by Reynolds, nor by Jefferson, but by the Personnel Board, or by the Circuit Court of Jefferson County. None of the three defendants being the final decisionmaker with respect to Barnes' discipline, no matter what their motives, *Scala* would be an insurmountable obstacle even if Barnes could otherwise get out of the starting gate.

### Conclusion

For the reasons discussed above, defendants' motion for summary judgment will be granted by a separate and appropriate order.

DONE this 2nd day of September, 1998.

_____
WILLIAM M. ACKER, JR.
UNITED STATES DISTRICT JUDGE